**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| PAUL A. DiMARTINI, et al., | 3:09-CV-0279-ECR (VPC) |
| Plaintiffs, | |
| vs. | **ORDER** |
| PURCELL TIRE & RUBBER COMPANY, et al., | |
| Defendants. | |

Before the court is plaintiffs' motion to exclude Grant Thornton LLP and Brian Wallace as defendants' Rule 26 expert witness (#70), defendant Purcell Tire and Rubber Company ("Purcell") opposed the motion (#73/74) and filed countermotions to confirm findings, conclusion and decision of Grant Thornton (#75), and to exclude the expert report and testimony of Greg Regan (#76). Plaintiffs replied and filed an opposition to the countermotions (#86/87), and Purcell replied (#89).

**I.   Statement of Facts**

This case arises over a dispute between plaintiffs, Paul DiMartini and Britt Johnson ("plaintiffs"), and Purcell Tire and Rubber Company and Keith Burcher's ("Purcell") purchase of plaintiffs' company, D&D Tires, Inc. ("D&D"). In April 2008, the parties executed a stock purchase agreement ("SPA"), which provided that Purcell would purchase the business pursuant to a formula provided in the SPA. After signing the SPA, Purcell contends it noted a downward trend in D&D's financial performance, which resulted in a review of various aspects of D&D's operations. Through this process, Purcell also noted that D&D had begun to generate sales with one key customer, Goldcorp, that appeared to be new to D&D. As a result, Purcell began to question D&D's business and its apparent reliance on this new customer for revenue.

At Purcell's request, the parties met in May 2008, and they agreed to an amendment to the SPA. The parties agreed to a fixed price of sixteen million dollars to be paid at the closing of the amended

SPA, plus an additional amount, which would be added to the purchase price as an earn out amount (#74, Exh. 1). The earn out amount would be based on D&D's financial performance after closing. *Id.* On May 1, 2008, the parties signed the first amendment to the SPA and an Earn Out Agreement. *Id.* The Earn Out Agreement required Purcell to prepare financial statements for the period from April 1, 2008 to December 31, 2008 (Milestone Date). *Id.* The financial statements were to be prepared according to GAAP and D&D's standard accounting procedures. *Id.* Purcell would then determine on the basis of the financial statement to what extent and whether the Performance Goal was achieved by the Milestone Date. *Id.* The Earn Out Agreement provides a formula under which plaintiffs would be paid if D&D met the Performance Goal after the closing under the SPA. *Id.*

After the execution of the Earn Out Agreement, Purcell began a review of D&D's transaction history with Goldcorp and engaged its accounting firm to review D&D's financial records before Purcell could completed an audit of its own financial records. *Id.* Purcell contends that in December 2008, it discovered that plaintiffs had failed to follow GAAP[1] and to properly maintain D&D's records. *Id.* Purcell alleges that plaintiffs improperly accounted for the sale of tires to Goldcorp and that contrary to the terms of Goldcorp purchase orders, plaintiffs "booked" or credited the sale of tires to Goldcorp immediately upon shipment, and in some cases, before manufacture or shipment. *Id.* Purcell asserts that the result was that plaintiffs prematurely recorded the transaction as a sale in the form of an account receivable, which was, in turn, recorded as revenue on D&D's books. *Id.* Because Purcell did not discover the pre-booking of Goldcorp transactions until after execution of the First Amended SPA and the Earn Out Agreement, Purcell contends that it could not provide plaintiffs with accurate financial statements for D&D for the period ending December 31, 2008. *Id.* As a result, Purcell could not provide a calculation as to whether the financial statements warranted an earn out payment. *Id.*

When defendants failed to provide a calculation and payment under the Earn Out Agreement, plaintiffs filed this action to seek payment under the Earn Out Agreement, among other claims. Purcell

---

[1]Generally Accepted Accounting Principles.

counterclaimed and alleged that plaintiffs improperly booked the Goldcorp transactions to inflate D&D's revenue, which also inflated both the purchase price and the amount due under the Earn Out Agreement.

Purcell alleges, among other claims, that plaintiffs breached the Earn Out Agreement by failing to consistently apply GAAP to D&D's financials and failing to fulfill their obligations concerning the SPA, which forms the basis for Purcell's counterclaims to the earn out amount set forth in the Earn Out Agreement.

The Earn Out Agreement contains a dispute resolution provision, which was triggered because Purcell did not make a final determination concerning whether the performance goal was achieved. It provides:

> In the event that within forty-five (45) days following the Milestone Date the Company has not made a determination of whether and to what extent the Performance Goal has been achieved as of such time, and in the further event that either Participant notifies Company of its good faith belief that the Performance Goal has been achieved then the determination of whether and to what extent the Performance Goal has been achieved shall be submitted to a mutually agreeable *independent accountancy firm*, *which shall determine whether and to what extent the Performance Goal has been so achieved;* provided, however, that the determination as to the achievement of the Performance Goal shall not take into account any change in the accounting methods of the Company or D&D following the Effective Date (including any inventory accounting or revenue recognition). The determination of whether and to what extent the Performance Goal has been achieved shall hereafter be referred to as the "Determination" and such date of determination shall be hereinafter referred to as the "Determination Date."

(#74-1, Exh. 1) (emphasis added). In May 2009, the parties stipulated to retain Grant Thornton, LLC to calculate the earn out amount, and Mr. Wallace of Grant Thornton was assigned to this task. In the letter agreement accepting this assignment, Mr. Wallace stated that the scope of services is the calculation of the performance goal under the Earn Out Agreement and that the engagement only included these services (#87-2, Exh. B). Both sides made submissions to Mr. Wallace and had telephone meetings with him to answer his questions about the calculation of the earn out amount (#70, Bassak Decl.) Mr. Wallace provided his final report on February 1, 2010, and calculated the earn out at $2,283,721.00, which is less what plaintiffs believe they are owed, but more than Purcell contends should pay. *Id.*

3

On June 3, 2010, the parties disclosed their expert witnesses pursuant to the scheduling order, and plaintiffs identified Greg Regan as their accounting expert and produced a corresponding report. Purcell identified Mr. Wallace based on their understanding that the parties had agreed that Mr. Wallace would provide his opinions as to the calculations in his February 2010 report. On June 30, 2010, plaintiffs sent Purcell a letter and objected to Purcell's designation of Mr. Wallace as an expert, particularly because Purcell intended to use the report to prove their counterclaims against plaintiffs and because plaintiffs deemed Mr. Wallace an independent accountant retained by both parties for a limited purpose. July 6, 2010 was the deadline to designate rebuttal experts, and Purcell designated two experts, Messrs. Hess and Goldstein. On July 14, 2010, this court held a emergency hearing concerning the designation of rebuttal witnesses, and it allowed Purcell to designate Mr. Goldstein, but not Mr. Hess (#62).

Thereafter, plaintiffs renewed their request that Purcell withdraw the designation of Mr. Wallace an their expert, Purcell did not respond, and plaintiffs' motion to exclude Mr. Wallace as a expert (#70) followed. That motion not only drew Purcell's opposition; they also moved to confirm findings, conclusion and decision of Grant Thornton (Mr. Wallace) (#75) and moved to exclude Mr. Regan as plaintiff's expert (#76). The court heard oral argument on motions on November 24, 2010 (#94), and this order now follows.

### II. Plaintiffs' Motion to Exclude Grant Thornton and Brian Wallace as Defendants Rule 26 Expert Witness (#70)

Plaintiffs ask the court to disqualify Mr. Wallace as an expert witness for Purcell because both parties retained and paid Mr. Wallace to compute the earn out amount pursuant to the dispute resolution provision of the Earn Out Agreement. Since Mr. Wallace acted as an independent accountant for the benefit of both parties, plaintiffs contend that neither party can now designate him as their expert witness. The court has broad discretion to disqualify an expert witness where the expert previously obtained confidential information about the case, or where it would create an appearance of impropriety to do so. *Campbell Ind. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980); *see also, Cordy v. Sherwin-Williams Co.,* 156 F.R.D. 575, 580 (D.N.J. 1994). In exercising its discretion, the court may consider

4

several factors, but there is no bright-line test. *See, e.g., Hewlett-Packard Co. v. EMC Corp.,* 330 F.Supp.2d 1087, 1092 (N.D.Cal. 2004) ((1) whether the opposing party and the expert previously had a confidential relationship; (2) whether the opposing party disclosed confidential information to the expert; (3) fundamental fairness and the prejudice that would result if the expert is or is not disqualified; and, (4) whether disclosing the expert will promote the integrity of the legal process).

Plaintiffs assert that allowing Mr. Wallace as Purcell's expert witness is unfair and will create an appearance of bias, particularly since both parties selected and retained him as a neutral or independent accountant for the benefit of the parties. Mr. Wallace's final report to the parties defines his role solely "to determine whether and to what extent the *Performance Goal*, as defined in the Earn Out Agreement . . ., has been achieved" (#74-4, Exh.4). Plaintiffs argue that neither the parties nor Mr. Wallace ever intended that he would be called to testify as an expert for either party, and that for one party to now designate Mr. Wallace as a Rule 26(a)(2)(A) expert will put plaintiffs at an unfair disadvantage when they are called upon to cross-examine an expert they had jointly retained for the limited purpose of calculating the earn out amount.

Upon receipt of Mr. Wallace report, plaintiffs designated their own expert, Mr. Regan, not to attack Mr. Wallace's earn out calculation, but to testify concerning the parties' positions regarding financial statements in the case, especially as it concerns the disputed sales to Goldcorp. Plaintiffs argue that had Purcell wished to similarly designate an expert to testify concerning these matters, it could have done so.

Purcell characterizes Mr. Wallace as an expert designated under Fed.R.Civ.P. 26(a)(2)(A), which provides that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Purcell acknowledges that it has not separately retained Mr. Wallace as an expert pursuant to Fed.R.Civ.P. 26(a)(2)(B), nor has it entered into a new agreement to retain him. Rather, Purcell intends to call Mr. Wallace to testify concerning the work he has already performed in calculating the earn-out amount. Purcell analogizes Mr. Wallace to a treating physician who is called to testify to the care and treatment of a patient and not as a specially retained expert, even though such an expert may offer opinion testimony under Fed.R.Evid. 702, 703

5

and 705. The court finds this analogy inapposite because Mr. Wallace, unlike a treating physician, was brought into this dispute by *both* parties to serve as a neutral to compute the earn out amount. Carrying the analogy further, unlike a treating physician, Mr. Wallace was not Purcell's longtime accountant who will testify about the accounting and financial matters relating to Purcell's business or this action. Mr. Wallace's role is entirely a function of the dispute resolution provision found at Section 2(b) of the Earn Out Agreement.

Although Purcell disagrees with Mr. Wallace's conclusion about the earn out amount, its motivation for designating him as an expert concern the basis of his calculation. Purcell intends to elicit testimony that D&D's books were not in accord with GAAP, and that the EBITDA[2] was inaccurate and flawed. Presumably, Mr. Wallace would be asked to testify that plaintiffs prematurely booked Goldcorp's transactions, which is inconsistent with GAAP. As a result of the improper booking of revenue, Mr. Wallace calculated the earn out amount to be $2,283,721.00, less than plaintiffs alleges was owed, but more than what Purcell alleges was owed. Purcell also argues that the improper booking of revenues substantially affected the purchase price that Purcell paid for D&D. According to Purcell, it now believes the purchase price for D&D was inflated, and it would never have agreed to an additional earn out had this information been disclosed earlier.

The court cannot reconcile Mr. Wallace's role as a jointly retained independent accountant with Purcell's designation of him as an expert witness. Although both parties may not have provided Mr. Wallace with confidential information, the parties both believed him to be an independent third party retained to examine limited financial information and to provide the earn out amount. The parties no doubt provided Mr. Wallace this information with the understanding that the assignment was limited solely to what is defined in the earn out agreement, his engagement letter, and his findings. The court concludes that it would create an appearance of impropriety and would unfairly prejudice plaintiffs if Mr. Wallace were to be called as Purcell's expert. The court finds that the scope of Mr. Wallace's assignment was limited to calculating the earn out amount and that had Purcell wished to rely on

---

[2]Earnings before interest, taxes, depreciation and amortization.

portions of his report, which support their defenses and counterclaims, they should have timely designated an independent expert. However, both parties may use Mr. Wallace's final calculations dated February 1, 2010, which is Mr. Wallace's conclusion about the earn out amount owed to plaintiffs. Plaintiff's motion to exclude Grant Thornton and Mr. Wallace as Purcell's expert witness (#70) is granted.

### III. Purcell's Motion to Confirm Findings, Conclusions and Decision of Grant Thornton (#75)

Purcell moves the court to confirm Mr. Wallace's report on the ground that Mr. Wallace served as an arbitrator in making his calculation of the earn out amount. Purcell first points to Section 3(b) of the earn out agreement, which provides that the "determination of a neutral auditor shall be final and binding on the parties" (#74-1, Exh. 1, p.3). Next, Purcell notes that in his letter decision of February 1, 2010, Mr. Wallace's states that he was selected "by the Disputing Parties to act as the arbitrator" to resolve the earn out amount (#74-4, Exh. 4, p.1). In addition, during discussions among counsel concerning Mr. Wallace's role, the parties have referred to Mr. Wallace as an "arbitrator." Finally, Purcell relies on state and federal arbitration acts for the proposition that a party who receives an arbitration award is entitled to have that award confirmed.

At the November 24, 2010 hearing, the parties agreed that Section 2(b), not Section 3(b), of the earn out agreement, is the controlling dispute resolution provision; therefore, the "final and binding" language of Section 3(b) does not control. Section 2(b) refers only to a "mutually agreeable independent accountancy firm," and that person's determination is not characterized as final and binding.

It is true that over the course of discussions, correspondence, and even in Mr. Wallace's final report, he is sometimes referred to as an arbitrator. However, his role was also called "ministerial, " and at one point in this action, Purcell acknowledged as much and noted that Mr. Wallace's role was "ministerial and that [Mr. Wallace] is not serving as the judge or jury in this case" (#86, Bassak Decl. & Exh. E). Most telling is that Section 2(b) of the earn out agreement defines Grant Thornton's and Mr. Wallace's role as "an independent accountancy firm," and it is devoid of any reference to standard arbitration provisions or the statutes that grant such authority. It is true the parties supplied Mr. Wallace

7

with documents and had telephonic meetings, but this was an informal process, in contrast to discovery, an evidentiary hearing, or any procedural safeguards or AAA rules.  Based upon the foregoing, Purcell's motion to confirm findings, conclusions, and decision of Grant Thornton (#75) is denied.

**IV.     Purcell's motion to Exclude Expert Report and Testimony of Greg Regan (#76)**

Purcell's motion to exclude Mr. Regan as plaintiffs' expert witness is premised on the argument that because Mr. Wallace served as an arbitrator; therefore, Mr. Regan's testimony constitutes a collateral attack on Mr. Wallace's "final and binding conclusions" (#73).  Since the court has denied Purcell's motion to characterize Mr. Wallace's earn out calculation as an arbitrator's award, Purcell's motion to exclude Mr. Regan fails.  Purcell's countermotion to exclude Mr. Regan (#76) is denied.

**V.     Conclusion**

Based on the foregoing, **IT IS HEREBY ORDERED** as follows:

1. Plaintiffs' motion to exclude Grant Thornton and Brian Wallace as defendants' Rule 26 expert witness (#70) is **GRANTED;**

2. Purcell's motion to confirm findings, conclusions and decision of Grant Thornton (#75) is **DENIED**;

3. Purcell's motion to exclude expert report and testimony of Greg Regan (#76) is **DENIED;**

**IT IS SO ORDERED.**

DATED:   December 7, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

8